### *The final accounting in* IRA SACKETT's *Estate.*

THE distinction made by the statutes of this State between a testamentary and a general guardian. A testamentary guardian not to receive a minor's legacy or distributive share, but in default of a general guardian, the moneys must be paid into Court.

THE SURROGATE. The legacy of $5,000 given to the minor legatee, Francis E. B. Sackett, it is claimed by the testamentary guardian should be paid over to him, under the following provisions of the Revised Statutes:

"If the legacy be of the value of fifty dollars or more, the same may, under the direction of the Surrogate, be paid to the general guardian of a minor, who shall be required to give security to the minor, to be approved by the Surrogate, for the faithful application and accounting for such legacy." (3 *R. S., 5th ed., p.* 177, § 52.)

There is a similar provision as to distributive shares of intestate estates belonging to minors. "The Surrogate may direct the same to be paid to the general guardian of such minor." (*Same vol., p.* 185, § 87.

The power of a Surrogate to direct payment of a legacy or distributive share to a testamentary guardian, under the above provisions, has been variously decided upon by my predecessors in this office. It has been argued that a testamentary guardian, appointed by the father of a minor, held a higher and more responsible trust, than a guardian appointed by a public officer; and that the word "general," used in this statute, was intended to embrace, as of course, the class of guardians, who, existing by virtue of paternal election and delegation, stood, perhaps, more absolutely in *loco parentis*.

The power of appointment of a testamentary guardian is given by our law to the father of any child born, or likely to be born, even though the father himself be a minor. Until the act of 1863, it could be exercised by

the father alone, without, or in direct opposition to the mother's consent. By that act, the consent of the mother, if living, is required, and I have been frequently compelled since its passage to set aside, as null, the appointment of a guardian for a minor, made by the will of the father, where the surviving mother had not signified her concurrence. A testamentary guardian is not called upon to give any security for the care of the person or property of the child; and, although responsible to the Courts of Law and Equity for his conduct as such, is not in any sense amenable to the Surrogate's Court for his disposal of either. To direct the payment of a legacy or distributive share to a testamentary guardian, would be, therefore, to place a trust in the hands of one over whose future conduct this Court can have no control, and upon whom the process of this Court would exert itself in vain, no matter what his misconduct towards his ward might be.

There is a distinction everywhere made in the statute, between the general guardian appointed by a Court of Equity, or by the Surrogate, and the testamentary guardian appointed by the parents. It is declared that "every guardian appointed by the Surrogate, shall have the same powers as a testamentary guardian." There is, then, no inferiority in such an appointed guardian. And there are safeguards thrown around his action, unknown to those whom fathers appoint by their wills to care for their children. It is obvious that the Legislature intended, by establishing these safeguards, to discourage testamentary appointments, and induce those who leave minor children behind them to confide them to the protection of the Courts. A general guardian, receiving his letters from the Surrogate, is required to give a bond, "in a penalty double the amount of the personal estate, and of the value of the rents and profits of the real estate." (Sections 8 and 9.) By the invariable practice of this Court for several years, this bond is required to be executed with two sureties, each qualifying in the penalty, like the

bonds of administrators. A requirement is made and enforced (sections 35 *et seq.*), that so long as such a guardian remains in possession of any part of the estate or income, he shall file "an annual inventory and account, on oath;" which account the Surrogate is to cause to be examined; and if the account be unsatisfactory, the Surrogate may remove. A guardian appointed by a Surrogate may also be removed for "incompetency, wasting the real or personal estate of his ward, or any misconduct in relation to his duties as guardian," (section 14); or in case of his sureties becoming insolvent, and his failure to give further sureties (section 24). These provisions, creditable to the sagacity and humanity of the Legislature, are sufficient to enforce justice to the ward, in almost every imaginable instance, and seem to furnish every necessary degree of protection; while the testamentary guardian is freed of all this careful oversight and restriction.

It would appear, then, to be the duty of a Surrogate, where no general guardian has been appointed under bonds given to the Surrogate, to refuse to order payment of a minor's legacy, as he is permitted to refuse it, even if, by the words "general guardians" used in the sections I have first quoted, "testamentary guardians" are held to be included. But the statutes so evidently favor the guardians appointed by Courts, that it is clear to my mind that such guardians only were intended to be entrusted by Surrogates with the moneys of minors.

I shall hold that I cannot lawfully direct payment to a testamentary guardian of a minor's legacy or distributive share; but that, unless letters of guardianship be taken out from a Surrogate's Court within this State, and security given thereon to the minor or a guardian be appointed by the Supreme Court, I must direct the moneys to be paid into Court.